May it please the Court, good morning, my name is Teresa McLaughlin and with me is Richard Morrison, the Acting Assistant Attorney General. This case presents This case seems to involve a lot of money. That's true, Your Honor. And for instance, the XO case that is still pending before the Court of Federal Claims alone is worth $4.5 million. And I forget what is at issue in the MCI Roadcom case, but that also involves a lot of money. Does this have going forward significance also? Yes, it does, Your Honor. It's a little common that we don't, that this is a significant issue. Why are there no Treasury regulations beginning with this question? No, a while back the Treasury issued a notice of comment, but then no rights have been written. But in this case... Did they propose regulations? No, I don't think so, Your Honor. I'm not understanding, what was the point of the notice of comment? Oh, I'm sorry. I forget the exact nature of the notice. Maybe it was a notice of proposed rulemaking. Well, that would usually be proposed rules. Well, I don't think that regulations were proposed. I think that a notice went out saying you may be looking at these rules. When did that happen? A few years ago. Then nothing happened. But there are... Given the number of cases that are affecting, are there any plans to issue regulations? Not to my knowledge, but what the Treasury has done is, for a period of 30 years, has had revenue rulings, published revenue rulings, that address... Whereas Treasury regulations have broad goals of general application, the Treasury has addressed both issues that are presented in this case. It's not very clear. They put it in the chair, but it's not very clear. Well, I can take that back to, you know, to the people across the street who want to... Anyway, the rulings on the local issue make it clear that incoming lines only do satisfy the statute, because once a clause is answered, there is two-way communication on the telephone line. And on the second issue, there has long been a ruling that a line connecting the central office, you know, to... A line connecting a private network to the central office of a telephone, local telephone exchange, is not a private communication service itself. I don't think that if you were an ordinary consumer and somebody said, we're going to offer you a telephone service, and you said, great, and the telephone company said, no, there's a small catcher. You can't make any outgoing calls. You can't really see calls. Most people wouldn't think of that as a telephone service, would they? Well, I don't think it's what an ordinary consumer wants, but there are... There have long been applications where calling for just a dial-in, like time of day, news and weather reports, even, you know, fraternity house calls, or, you know, phones in restaurants, you know, providing for takeout food. So, and all the statute requires is that you have access to a local telephone service. Well, what does access mean? Access means the connection to the local exchange. And I believe in the Translux case, which involved teletype writer exchange service, the court focused on the interface, you know, the connection. What was the place that gave you the connection to the outside service? But in terms of the dictionary definition of access, it seems to suggest initiation versus access. And in fact, that word definition of access is no initiation capability. You're calling it a choice, correct? Well, that's only... One definition of access is the ability to enter, which would suggest initiation. But it's not the only definition. The other definition is an ability to make use of something. And that certainly is... But then what if you never not have access? If that's the definition, what does the word access even mean in this statute? You would, give me an example of when you would have communications and not have access. Well, I... That's the definition. Well, I think technically access is the connection. And then the statute wants you to have the privilege of communication, too. And the two really do go hand in hand. You define them as identical. And the legislative history says access defines local telephone service. So clearly they meant for the word access to be meaningful. And you've just defined it identically with communication, which appears throughout the statute elsewhere. Well, there's a footnote in the opinion of the court below that talks about the telephone industry indication, the telephone industry definition of access. And that also speaks to the interface or connection. So it may be that they were just talking about the technical telephone industry connection. And then Congress did want you also to have the privilege of communication with substantially all other callers in the local service area. Do you acknowledge that your definition really renders the word access and the word communication interchangeably in the state? Well, I think access, you could look at access as the technical industry interface connection where communication takes place. But Congress, it is closely related to the privilege of communications. They go hand in hand. Can you give me any example where you have communication and not have access? I can't think of any. So, yes, they go hand in hand. Congress did want subscribers to have the privilege of communication with substantially all other callers in the local service area. And here, every caller who has a number in the local telephone exchange can call any of the taxpayers' access numbers. And when the call is answered, communication flows both ways on the telephone line. And that satisfies the statutory requirement that there be communication with substantially all other departments in the local service area. In holding to the contrary, the court below really focused on an artificial distinction, which was that the taxpayers' modems could cut off anybody's telephone call who did not have the required password. Yes, that's a self-imposed restriction. It has no bearing on the capability of the service provider. And it's no different than if any local customer were to hang up on a telemarketer or anybody who had a wrong number that he didn't want to talk to. So that's a completely artificial limitation. The court below focused on Congress' choice of the words, communication with, in this provision, the local telephone service, whereas in the waterline toll telephone service provision, Congress talked about communications to and from. And according to the court below, only incoming only lines. Was it to and from or to or from? I'm sorry, to or from. I'm sorry, I don't want to spoke. But that approach really was misconceived for several reasons. Because in general parlance, you can communicate with someone without starting the conversation yourself. Communication with does not imply the ability to start or initiate a telephone call. Does communicate with require them to be able to respond? Yes. It does require that though. So it requires the ability for them to respond but not necessarily the ability for them to initiate. Exactly. And once the telephone line was open, once the call was answered, communication flowed both ways on the line. And our point is, and Judge Allegra in the Convocation case agreed, that that satisfies the statute. And if Congress had really meant what Judge Leto thought they meant, then it perhaps would have chosen, instead of communication with, communication to and from other subscribers to imply both the ability to make and receive calls. So do you think there's no difference between the word with and the words to or from? Well, I don't think Congress meant it in a larger sense. Well, if you talk about communication with, conversationally, communication with doesn't imply that you can only communicate with someone if you can start the conversation. The analysis here is not simply a conversational analysis. An analysis is what would these words mean in the context of this statute. Right. But Congress was thinking about the ordinary meaning of the words. And what Judge Leto has done is he has chosen a very narrow definition of the word with. Actually, you were agreeing that there had to be back and forth communication. You were just saying that communication doesn't have to be initiated by the subscriber. Right. So in that sense, it seems to me you're saying with does conflict back and forth communication. Once the telephone line is open, we would agree that there has to be communication both ways on the line. It's unlike the situation involving a pager where you can send a signal, but no response can come back. That's the distinction that I was trying to make. Why isn't the proper way to look at the statute in terms of a one where it says the access to a telephone system, so access requires who is going to initiate, and the privilege of telephonic quality communication with, which, as you suggest, means there's a back and forth. I mean, obviously, Congress spelled out two separate things with the word and, both of which must be met in order for something to qualify as a local telephone service. And I'm still stuck on how you basically say access simply means communication, which suggests to me that you're not saying it's two separate things that must exist for something to qualify as a local telephone service. Congress has the word and in there. They laid out two separate conditions. Well, I don't know. I think I answered your question, Your Honor, and I don't know what else to say. But in a larger sense, I wanted to get back to the words communication with. In a larger sense, Judge Luttage was using these words with more precision than Congress intended. He used a narrow, isolated definition of the word with, which is interaction. On the second issue before you said that, if we were to rule against the government on the second issue, would that make it unnecessary to decide on the first issue? In other words, is there a separate charge in all of these instances? Well, there were some lines where no separate charge was stated. So I think it is necessary. I think there were some lines that were both incoming and outgoing. I'm not sure, but I don't think that the separate I think there would be an issue with the separate charge requirement of private communication and service would be satisfied for all of these lines. And I doubt the incoming only lines. On the second issue, our point is that these telephone lines connected the taxpayer's private network to the public telephone system. And they were by no means private lines. I thought that your point was that these were not private lines where there was a competitive service to the public telephone company. And therefore, they didn't satisfy the definition of private. As Congress only wanted to re-laws the line to be a competitive private service. Do you understand that? Well, part of it, yes. Congress was trying to level the playing field between the private microwave services that weren't connected to any telephone system at all. And some services offered by AT&T where there was a completely private network, but you could also get a line out. And the reason why it allowed private communication service, what it did was it said we'll allow the exemption even if the network is also connected to the public system by switching. But what it didn't do was allow exemption for the very lines that connected the private system to the public. I did want to save some of my time for rebuttal. Well, you have consumed your entire rebuttal time, but I'll restore a few minutes. Thank you. Let's hear from USA Choice. May it please the Court, I'm Chris Bartolomucci, and I represent the USA Choice in this case. With the Court's permission, I would like to start with the second issue, the private communication service issue. Because I believe this may be, in fact, the easiest ground in which to decide this case. It would resolve the whole case. I believe we can resolve the whole case because this argument does not depend upon whether the lines are incoming only. That is my understanding. It's my understanding, therefore, that a ruling on private communication service in favor of USA Choice would cover all of the lines. Whereas a ruling on local telephone service would apply to only those lines that are incoming only. Would that be true of these other cases as well? All the pending cases? Yeah. I'm not able to say that. Is it the general industry practice to make a separate charge for these lines? I'm not able to speak to what the general industry practice is. I don't think that's disclosed in the record. But I do believe that we would dispose of the entirety of the lines of issue in this case. And this section of the statute, Section D, is an exclusion for private communication service. And there's really little debate about most of the provisions, most of the terms in the statute. These are communication channels or groups of channels. There's no debate about that. There's no debate that a separate charge has been made. So the only question is whether USA Choice has exclusive or priority use of those channels or groups of channels. And the facts in this case, I believe, strongly support a conclusion that we do have exclusive or priority use. We're talking about dedicated lines that are specially configured for USA Choice. And this is the clincher. These lines can only be used to reach USA Choice. They can't be used for any other purpose. These are physical lines that run from the central office of the local telephone system to USA Choice's network servers. But doesn't it matter that this is a self-imposed, as the government explained, situation? I mean, how is this any different than me screening my calls in there? I always look on Caller ID to see who it is, and most of the time I don't pick it up. How is that any different? Judge Moore, it's not self-imposed. The statute uses the term service. So what we have to do is focus upon the service that we paid for and that is being provided by the telephone company. And the service at issue that we paid for is one in which there are dedicated lines that run only to USA Choice and that can only be used to reach USA Choice. Now, we could have bought a different service. We could have bought teletypewriter service, and then we might be subject to that tax. So I don't think the relevant test is what we might have done or could have done. The question is, what service did we buy? And the record here makes it clear that that service gives us exclusive or priority use of these lines because the only one and only way in which they can be used is to call USA Choice. Now, what the government argues with respect to the second issue of private line issues. Can we call it private communication service, the statutory term? We'll call it private communication service. Thank you. The government says that that's only for lines that aren't connected to the central exchange. What's your response to that? I'll point you to the statute. The statute says, regardless of whether such channel is connected through switching with local telephone service, the express language of the statute defeats their argument, which is why they spend their entire brief on this point going into Muslim legislative history because they are so clearly losing on the plain language of the statute. But they also argued from the legislative history, and there does seem to be some merit to this, that the concern that Congress had was that the telephone companies ought not be able to pay a tax on services that were performed by competitive private entities, right? Well, the legislative history in the Senate report expressed a concern that imposition of the tax on some private communication services would represent a competitive handicap. This legislative history supports our construction because it suggests that Congress wanted a fairly broad interpretation of this exclusion so that the tax would not be a hindrance upon new technology and new services. I'm not quite following that because it seemed to me that the concern was that they didn't want to be unfair where private communication services were alternative to what the telephone companies were. But that's not the situation here, right? There isn't any private alternative to what the telephone companies are. No. Right? So isn't that a bit of a problem for you? No, because again, my reading of the legislative history, and this is discussed in our brief, is that Congress added this exclusion in the 1965 amendments to the statute because Congress didn't want these sorts of private communication services to be taxed and therefore have technology stifled. And I'd like to make the point that because the language is plain on its face, we never even get to the legislative history. These words that we're talking about, exclusive or priority use, are not ambiguous. And therefore, there's no occasion to go into the legislative history. You don't think there's any ambiguity when we have decisions from two different judges that come to a completely diametric opposite conclusion? No. If that were the case, Judge Lind, then virtually every statute in America would be ambiguous. It's quite common that a statute is being not ambiguous, but there can be differences of opinion about how it's construed. But the government obviously construes it a different way. But that's not enough to make the statute ambiguous. The words exclusive or priority use are clear in our view. If you want to tally up the courts, there are three siding with us and one siding with them. The – so – but I wouldn't – I don't think we even need to go there because the words are plain on their face. If we do address the first issue, if we were to affirm – I'm just making sure I understand this – we then wouldn't have to reach the second issue at all, right? Because you wouldn't be under W252A, so we wouldn't have to figure out whether you had an exclusion. Well, unfortunately, Judge Moore, you still would have to get to the second issue because the first issue only covers the one-way incoming only lines. And as to that issue, the government's construction – Some of the lines are two-way. That's right. The DCS and DRA lines were deemed to be private communication service lines and therefore not taxed even though they are two-way lines. The government's construction on issue one, they in effect read the word with to mean just two-way communication. The effect of that construction is to completely redound in the statute the words access, and, privilege, telephonic, and with. And let's just start with access. The plain meaning definition of access is the right to enter. If I say that I have access to a building, that means I have the right to enter the building. It doesn't mean that someone from the building has the right to come out and see me. Or if you say that a lobbyist has access to the president, that means he can call the president. No lobbyist would say, I have access because the president can call me anytime he wants to. And that comports with both legal and ordinary dictionary definitions of the word access. And it also – If the treasury adopted a regulation requiring a construction of the statute which would cover new funding on legal lines, would you say that regulation was invalid? I would say that if they issued a regulation and if the statute were ambiguous, the regulation would be entitled to Chevron deference. But I don't believe the statute is ambiguous. And as you know, they have not issued regulations. In 2004, IRS and Treasury jointly issued a one-page advance notice of proposed rulemaking on July 2nd, 2004, in which they said that questions have arisen concerning the application of the statute and that they were considering proposing regulations that would revise existing regulations to reflect changes in technology. But they never followed it up with any sort of regulation – proposed regulations. Do you know why not? I do not know. But that question is better put to the government because I'm sure the IRS wouldn't tell me. But we do know that the IRS and Treasury have not promulgated any proposed regulations. They have not explained why they haven't acted. So I think that this really takes the wind out of the sails of the view that, oh, these revenue rulings have expressed a clear, longstanding policy. These revenue rulings, most of them are from the 70s. They predate the type of digital lines we're talking about here that connect to the Internet. And Treasury wouldn't have had occasion to issue an ANPRM if their policy were clearly applied to questions like this one. Does the IRS have the authority to issue revenue rulings passing a more classified act there? I don't know the answer to that. I do know that these revenue rulings lack the force of law and, therefore, under the Supreme Court's holding, we need – are not entitled to Chevron deference. Well, that's not so clear. I mean, at least in the baseball court, the court seemed to reserve the question. It's not been resolved. Well, the Supreme Court reserved the question, but this court has said in several cases, the Xerox case, the Goodrich case, the Western Company of North America case, this court has said the revenue rulings are not binding, which is to say they don't have the force of law. And for the very same reasons that the court in Meade concluded that the customs tariff regulations don't have the force of law, these revenue rulings are not binding on third parties who are cautioned not to rely on them. They're not issued through the notice of comment procedure. The very analysis the court used in Meade would suggest that revenue rulings don't get Chevron deference. But there really is no need to resolve that question in this case because the revenue rulings are factually inapposite. They contain no reasoning or no on-point reasoning. And the statutes are not ambiguous. Frankly, the only ruling that is on all fours with the facts of this case was IRS's 2001 letter ruling, which is really exactly on point. It addressed a one-way, incoming-only PRI line. And IRS concluded in that 2001 letter ruling, which – That's not a private letter. Yes, yes, it is, Your Honor. And not only that, it was revoked. It has a lot less significance than a general letter. I agree. I agree. Not many of these materials carry weight. But my point is, in a 2001 letter ruling, they decided on facts just like ours that the wines are not subject to the tax. But they withdrew that rule, right? Yes, yes, they did. They did, which just – I don't see that you got much out of it. My point is that so much for their longstanding policy if they can issue a letter ruling that goes in our favor on really fast. With respect to the income-only lines, once the subscriber makes the connection, then there is an exchange of data back and forth. Doesn't that satisfy the communication with the provision? No. That satisfies the provision of telephonic quality. The meaning of telephonic quality – and the government will admit this – is the ability to trade information back and forth. That's what telephonic communication is. So their construction of WIF reads the words telephonic quality out of the statute. It also reads out the words access and privilege. The words access and privilege imply that the subscriber himself has some power to initiate the communication. But in terms of communication with, I mean, you can have an exchange of data back and forth. And if the quality is not sufficient, the data will be lost along the way. So there's a difference between the quality of the connection and the reciprocity of the connection. Is there not? Well, there is some difference, Your Honor. But your argument or view, Judge Lang, would be a lot stronger if, in the very next subsection, Congress had not used the words communication to or from. Now, when Congress uses different words in two adjacent statutory sections in parallel provisions, it's assumed that Congress meant that they have some different meaning. What happens to me is that they've sort of given up on that. Because they say communication with as far as two-way communication, and they say once the connection is established, that capability exists. So I'm not sure they're even fighting it. But they're still fighting on the point that, oh, you don't have to have the power to initiate. They agree that there has to be two-way communication, and there certainly must be. But our additional point is that the subscriber, in order to have communication with, must be able to initiate the call. True enough, Your Honor. But we're not resting our argument entirely on those two words. We also point to the words access and privilege. When you read this language as a whole, access to a local telephone system and the privilege of telephonic quality communication with, that language altogether strongly implies that you have the ability to pick up the phone and yourself have the privilege of accessing the system and placing a telephone call. The government's – can I just wrap up, Your Honor? To answer a question that Judge Steck posed, the government's own expert on page A328 of the Joint Appendix said that a one-way communication service is unlikely to meet anyone's expectation of what is a local telephone service. And I'd have to agree with that. Thank you, Your Honor. Thank you very much.  That is exempt, and they have gotten the exemption for that. This is the central office line that hooks the network up to the public telephone service. If it did not, then taxpayer subscribers could not call in. Everyone has a dedicated line in the sense that my opponent is suggesting. And the – that type of line does not satisfy the statute's requirement that the subscriber have exclusive or priority use because anyone can call in. But they – and you can attest that they have used this. They don't have priority use. I thought – I didn't know that that was part of the question. They don't have priority use in the line. No, they don't because anyone can call in. And what the Court of Federal Claims said was that because the motor can hang up if they have an unwanted caller, they can hook. That constitutes priority use. Every subscriber has that right. And what we suggest is that what Congress meant by priority use in the sense that only USA Choice can receive calls, right? Yeah, and that's no different from any other public line that a subscriber has to allow incoming calls. And what we think Congress meant by priority use was a microwave channel. It's not exclusive, but there are a number of subscribers, and the communications can go through on a first-come, first-served basis. But that's still an internal communications service. And the definition that they're suggesting really undercuts the notion of what a public line is. Second, even though these lines are technologically very up-to-date, it's only in their – they have more channels, and they allow more rapid communication, but they are still functionally the same as an ordinary local loop. And finally, revenue rulings are binding on taxpayers and the IRS alike. And can the IRS issue a ruling without a taxpayer request? Yes, but sometimes taxpayer requests do result in revenue rulings. Well, most of the time. Well, I'm not sure, but sometimes they do. Thank you very much. Thank you both counsel. Case is submitted. Next case is 2007.